UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED ASSOCIATES, LTD.,        )
                    Plaintiff,    )
                             )
      v.                  )      Civil Action No.
                             )
DAKOTA OUTERWEAR CO.,     )
                  Defendant.   )

## COMPLAINT

## INTRODUCTION

This is a suit brought by the plaintiff United Associates, Ltd. ("United") against the defendant, Dakota Outerwear Co. ("Dakota"), for preliminary and permanent injunctions, statutory damages, treble damages or profits, compensatory damages, punitive damages, pre-judgment interest, attorneys' fees, and costs from the defendant's willful and malicious counterfeiting of the defendant's registered trademark.

Dakota is being sued by United as a result of the defendant's offer for sale, actual sale, distribution, promotion and advertisement of garments bearing counterfeits and infringements of United's federally registered trademark. As set forth below, the unlawful acts of the defendant constitutes federal trademark infringement and counterfeiting, false designation of origin and false description, and unfair competition under Rhode Island common law.

1

## PARTIES

1.      United, a Rhode Island corporation with a principal place of business at 376 Dry Bridge Road E 1, County of Washington, North Kingstown, Rhode Island, is a manufacturer, distributor, promoter, advertiser, marketer, and seller of garments for and to the military and federal government employees.

2.      Dakota is a North Dakota corporation with a principal place of business at 203 72nd Avenue NE, County of Ward Minot, North Dakota.  Dakota holds itself out, on its website, as a

> "veteran-owned small business providing military clothing, oil field apparel, and accessories . . . dedicated to supplying the US Military, National Guard, police, and other governmental agencies-local, state and federal-with clothing and other gear.  Dakota Outerwear Co. is a GSA contractor (contract #47QSWA18D009J) . . . [that] sell[s] specialized police and military clothing and equipment. [Dakota purports] to use high tech fabrics and fibers designed to provide the utmost in comfort and *safety* in all weather extremes. (Emphasis added).  From hats to boots, gloves, coveralls, uniforms, underwear and individual equipment, whether on duty or off, at work or play, [Dakota has] everything. [Dakota] regularly source[s] hard-to-find police and military clothing products which are either unique or have unique applications, and [Dakota is]  . . . always seeking to include the most innovative and cutting edge technology in [their] products."

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the federal trademark claims asserted in this Complaint pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

4.      This Court has supplemental jurisdiction over the claims asserted in Counts III and IV of this Complaint, which are brought under the common law of the State of Rhode Island,

pursuant to 28 U.S.C. § 1367(a).  The claims asserted in Counts III and IV of this Complaint are

so related to the federal trademark claims asserted in this Complaint that they form part of the

same case or controversy and arise from a common nucleus of operative facts.

5.      Venue in the District of Rhode Island is proper pursuant to 28 U.S.C. §§

1391(b)(2).

6.      This Court has personal jurisdiction over Dakota pursuant to Rhode Island

General Laws § 9-5-33.

7.      Since approximately 2006, Dakota has continuously and systematically placed

written orders to United in Rhode Island to purchase the plaintiff's garments.   The garments that

Dakota orders from United are shipped from Rhode Island to Dakota's facility in Minot, North

Dakota.

8.      Through at least the fully-interactive commercial internet website operating under

defendant's domain name, Dakota has targeted and solicited sales from Rhode Island residents by

operating an online purchasing system that offers shipping to Rhode Island, accepts payment in

U.S. dollars and, on information and belief, has sold garments to members of the military and

government employees in Rhode Island.  Dakota is committing tortious acts in Rhode Island, is

engaging in interstate commerce, and has wrongfully caused United substantial injury in the State

of Rhode Island.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

9.      United is a manufacturer, promoter, advertiser, marketer and distributor of clothing for active and retired military and federal government employees.  United manufactures, packages and distributes its clothing through several channels including dealers, retailers, distributors, internet sales and mail order catalogues.

10.      United converts knitted fabrics by buying fiber or yarns, knitting it into fabrics, then dyeing in various finishes and colors in accordance with customer or military specifications. United then manufactures various garments in accordance with customer and/or military specifications.

11.      All of United's fabrics and garments are manufactured in United facilities in the United States and then shipped for distribution from its warehouse in North Kingstown, Rhode Island.

12.      United complies with the Berry Amendment by certifying that all materials used in the manufacturing of its certified garments are produced in its USA manufacturing facilities, and that they are fully compliant with 10 U.S.C. 2533(a) which requires that its items be grown reprocessed, reused and produced domestically in the United States.

13.      All garments are inspected at and packaged in United's manufacturing facilities and then randomly re-inspected at its North Kingstown Rhode Island warehouse.

14.      Once the garments are received at the United warehouse, they are either shipped to United customers or placed in inventory.

15.      Since its founding in 2000, United has gained industry recognition for the quality of its military garments and fabrics.

4

16.     United's direct price is the lowest available price for its garments.

17.     United has caused a certain trademark to be registered in the United States Patent and Trademark Office on the Principal Register.  This registration is valid and subsisting and is (Trademark and Service Mark Registration No. 4795726 issued August 18, 2015 ("UNITED JOIN FORCES") for the design plus the words, letters and/or numbers of the United Join Forces logo.  A true and correct copy of this Registration is attached to this Complaint as Exhibit "A" and is incorporated by this reference.

18.     The United trademark is distinctive when applied to its high-quality apparel, signifying to the purchaser that the products come from United and are manufactured to United's quality standards and to the applicable military specifications.  United placed and continues to place this trademarked logo on in-house designed hangtags that are affixed to its garments.

19.     United's military garments include the Multicam® Barricade APECS Parkas (also referred herein to as "Multicam® Parka").  These parkas are manufactured from waterproof, breathable tri-laminate fabric to military specification PD 77AESG 06-02.  The brushed nylon outer shell laminate features NIR technology.  "Near-Infrared (NIR) Signature Management Technology is used to prevent detection of soldiers by NIR Image Converters.  These photocathode devices do not detect temperatures, but rather infrared radiation variances.  NIR-compliant uniforms use a special fabric that allows soldiers to appear at the same radiation level as the surrounding terrain, thus making them more difficult to "detect".

20.     Among other design features, United's Multicam® APECS Parkas are made out of Multicam® fabric.  Multicam® was designed for the use by the U.S. Army and subsequently by the Air Force in varied environments, seasons, elevations, and light conditions.  It is a seven-

color, multi-environment camouflage pattern developed by Crye Precision in conjunction with the United States Army Soldier Systems Center.

21.    The Multicam® camouflage print is owned by Crye Precision, ("Crye"), located in in Brooklyn, New York.

22.    Crye developed the print, and it makes considerable efforts to protect their product.  They receive a royalty per yard sold.

23.    Crye has one exclusive authorized distributor, 1947, LLC, based in Portsmouth Rhode Island.

24.    1947, LLC inspects every inch of its Multicam® fabric and, with few exceptions that do not apply here, destroys any overruns.

25.    A critical property, and safety feature, of the Multicam® print is that within the seven (7) colors that make up the print is a technology that prevents enemy snipers or night vision glasses from detecting the garments that allows our military troops to move around enemy territory undetected.

## COUNT I
### (Defendant's Unlawful Conduct)

26.    United repeats and realleges the allegations contained in paragraphs 1 through 26 of its complaint as if expressly set forth herein.

27.    For many years, Dakota has been a reseller of military garments, including United's garments, to federal government and military markets.

28.    On information and belief, the defendant is involved in the unauthorized marketing, manufacturing, distribution, advertising and/or duplication of counterfeit and

infringing copies of one or more of United's garments to unidentified persons or entities.

29.     Among the products sold by the defendant are the Multicam® APECS Parkas with the United designation.

30.     Upon information and belief, Dakota, after United's adoption of and use of its registered trademark on Multicam® APECS Parkas, has, directly and through its website, advertised, distributed, promoted, offered for sale, and has sold, in interstate commerce, counterfeits of Multicam® APECS Parkas with United's trademark to distributors and military base supply centers.

31.     The spurious marks or designations used by the defendant in interstate commerce are identical with, or substantially indistinguishable from, the United Trademark on the Multicam® APECS Parkas.  *See*, Exhibit "B", counterfeit tag and Exhibit "C", authentic United tag.

32.     On information and belief, Dakota purchased authentic samples of United's Multicam® APECS Parkas bearing the United trademark, with the express intent on its own and/or with others to reproduce counterfeit APECS parkas with counterfeit United hang ags displaying its trademark.

33.     In November, 2017, United discovered that counterfeit Multicam® Barricade APECS parkas displaying United's trademark were being sold by Dakota to a military base supply center located at Cannon Air Force base in Clovis, New Mexico ("Cannon").

34.     San Antonio Lighthouse for the Blind and Vision impaired, which operates 15 Base Supply Centers ("BSC"), including Cannon, on eleven (11) military installations located in Texas, Oklahoma and New Mexico.

35.     Representatives of the BSC located at the AbilityOne BSC at the Cannon BSC determined that it was receiving United's Barricade APECS Multicam® Parkas directly from United and also from one of UJF's dealers—namely, the defendant, Dakota.

36.     Cannon determined that it had paid less for the "same" United's Barricade APECS Multicam® Parka purchased from Dakota than it paid to purchase the Multicam® Parka directly from United.

37.     Upon close inspection, Cannon's representative determined that the garments and the hangtags looked different when compared side-by-side.  *See* Exhibit "D", authentic United Multicam® Parka with authentic United tag and Exhibit "E", counterfeit Multicam® Parka with counterfeit United tag; and Exhibit "F", authentic and counterfeit United tag side-by-side.

38.     Cannon's  BSC representative contacted United and reported the discrepancy in price and in the appearance of the Parkas.

39.     Cannon's representative also sent United photographs of the two (2) garments side by side and also sent United the two (2) garments.  Exhibit "G", Cannon photograph of portion of authentic and counterfeit Multicam® Parka side-by-side.

40.     Upon receipt and inspection, United determined that the "other" Multicam® Parka and hangtag were not manufactured and sold by United.

41.     Upon information and belief, a large number of counterfeit Multicam® APECS Parkas were delivered and sold by Dakota to the San Antonio Lighthouse for the Blind and

Vision Impaired for distribution and sale at its 15 BSCs located on eleven (11) military installations in Texas, Oklahoma and New Mexico.

42.   The hangtags containing United's trademark on the garment not made by United were counterfeit.

43.   United had the suspected counterfeit Multicam® APECS Parka bearing an identical counterfeit copy of the plaintiff's trademark tested by an independent laboratory.  The testing of the counterfeit and infringing  revealed that the Multicam® APECS Parka does not meet the required military specifications and was not authentic licensed Multicam® fabric. Therefore it is counterfeit and infringing.

44.   The act of manufacturing the counterfeit hangtags displaying United's trademark and representing that the Multicam® APECS Parka were authentic were calculated to confuse and to deceive the public and were performed with full knowledge of United's rights.

45.   Dakota is not now, nor has it ever been, associated, affiliated or connected with, or endorsed or sanctioned by United.

46.   United has never authorized or consented in any way to the use by Dakota of the United Registered Trademark or copies thereof.

47.   The defendant's use of the United Trademark or copies thereof on the defendant's garment(s) is likely to cause purchasers in the authorized chain of distribution and sale to believe erroneously that the goods sold by the defendant emanate or originate from United, or that said items are authorized, sponsored, or approved by United, even though they are not.

48.     This confusion causes irreparable harm to United, and potential physical harm--including death--to active military troops who purchased a Multicam® Parka, and weakens the distinctive quality of the United trademark.

49.     By using counterfeits and infringements of the United trademarks on the defendant's garments, Dakota is trading on the goodwill and reputation of United and creating the false impression that the defendant's parkas are United's legitimate products.

50.     The defendant has been unjustly enriched by illegally using and misappropriating United's intellectual property for the defendant's own financial gain.

51.     Furthermore, the defendant has unfairly benefited and profited from United's outstanding reputation for high-quality products and its significant advertising and promotion of its APECS Multicam® Parka by creating a false association with United, its genuine garment(s) and its Trademark.

52.     The defendant has disparaged United, its trademark and its garments products by creating a false association with United, its genuine goods and its trademark.

53.     United has had no control over the nature and quality of the garments sold by the defendant bearing counterfeits and infringements of the United's trademark.

54.     Among other things, the defendant's distribution, sale, offers of sale, promotion and advertisement of its products has reflected adversely on United as the believed source of origin thereof, hampered continuing efforts by United to protect its outstanding reputation for high-quality, originality and distinctive goods, and has tarnished the goodwill and demand for genuine United garments and products and, upon information and belief, will continue to do so.

55.     Upon information and belief, the defendant has acted with reckless disregard for United's rights or were willfully blind in connection with their unlawful activities.

56.     Upon information and belief, the defendant has willfully and maliciously engaged in their counterfeiting and infringing activities.

57.     As a result of the foregoing, this case constitutes an exceptional case under 15 U.S.C. § 1117(a) or a case of intentional counterfeiting under 15 U.S.C. § 1117(b).

58.     United has suffered irreparable harm and actual damages as a result of the acts of the defendant in an amount thus far not determined.

59.     The injuries and damages sustained by United have been directly and proximately caused by the defendant's wrongful advertisement, promotion, distribution, sale and offers of sale of its goods bearing infringements or counterfeits of the United trademark.

60.     United has no adequate remedy at law.

61.     The defendant's wrongful acts will continue unless enjoined by the Court.

62.     Accordingly, Dakota must be restrained and enjoined from any further counterfeiting or infringement of the United trademark.

63.     As a result of these and other activities, defendant has committed and is committing acts of trademark infringement willfully, deliberately and with prior notice and knowledge of United's registered trademark.

64.     Upon information and belief, defendant's acts of unlawfully infringing on United's registered trademark has been continuous and ongoing, beginning well prior to the events set forth above.

## COUNT II
### (Federal Trademark Infringement -- 15 U.S.C. § 1114 *et seq.*)

65.     United hereby incorporates by reference the allegations of paragraphs 1 through 64 of its complaint as if fully set forth herein.

66.     United has marketed, advertised and promoted its military garments under its trademark and logo, and, as a result of this marketing, advertising and promotion, these military garments and the United trademark have come to mean and are understood to signify the products of United, and they are the means by which those products are distinguished from the products of others in the same and in related fields.

67.     Because of the long, continuous and exclusive use of the trademark described in this complaint, United's registered trademark has acquired a secondary meaning associated by authorized foreseeable dealers, distributors and purchasers of United's military garments.

68.     The defendant's activities constitute use in interstate commerce of a reproduction, counterfeit, copy and/or colorable imitation of United's trademark.  Such activities are likely to cause confusion, mistake or deception as to the source, origin or approval of the infringing United product(s).

69.     Further, the activities of the defendant are intended to, and are likely to, lead the public to conclude, incorrectly, that the defendant's infringing garment that it marketed, distributed, manufactured, advertised and/or duplicated and sold originate with, are sponsored by or are authorized by United, to the damage and harm of United, the United States government, its distributors, agents, members of the armed forces, and to the public.  The defendant's activities

constitute willful and deliberate infringement of United's federally-registered trademark in violation of the Lanham Trademark Act, including but not limited to 15 U.S.C. § 1114(1).

70.     As a result of the foregoing, United has been damaged in an amount that will be ascertained according to proof.  In addition to United's actual damages, United is entitled to receive defendant's profits pursuant to 15 U.S.C. § 1117(a).  These actual damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b), because the defendant's violation of United's trademark was willful.  In the alternative, United is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c), and these statutory damages should be enhanced in accordance with 15 U.S.C. § 1117(c)(2) because the defendant's violation of United's trademark was willful.

71.     The activities of the defendant have caused and will cause irreparable harm to United for which United has no adequate remedy at law in that :  (i) if defendant's wrongful conduct continues, consumers are likely to become further confused as to the source of United's garments; (ii) United's trademark is unique and valuable property that has no readily determinable market value; (iii) the infringement by the defendant constitutes an interference with United's goodwill and customer relationships; and (iv) defendant's wrongful conduct and the damages resulting to United are continuing.  Accordingly, United is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a), and to an order under 15 U.S.C. §§ 1116(a), 1116(d)(1)(A) and 28 U.S.C. § 1651 impounding all copies of counterfeit and infringing United garments.

72.     On information and belief, the defendant has committed the acts alleged above with previous knowledge of United's prior use and superior rights to the trademark and with previous knowledge of the reputation of United's trademark in interstate commerce.  Further, the

defendant's actions were for the willful and calculated purpose of trading upon United's goodwill and for the willful and calculated purpose of distributing its infringing United products based upon the goodwill of United's trademark and business reputation, so as to mislead and deceive purchasers and the public.  The defendant's actions are likely to cause confusion and mistake among purchasers and the public as to the origin or association of its infringing products, all to the defendant's gain and United's damage.

73.     United is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

## COUNT III
### (False Designation Of Origin, False Description And False Representation Of United Packaging--15 U.S.C. § 1125 *et seq*.)

74.     United hereby incorporates by reference the allegations of paragraphs 1 through 73 of its complaint as if fully set forth herein.

75.     United has designed distinctive and aesthetically pleasing displays, logos, hangtags and packaging for the United garments.  These displays, logos, hangtags, icons and packaging are easily recognized by the authorized dealers, distributors and members of the United States Armed Forces who purchase these garments and are understood to mean that the products connected with them originate with United and are genuine United garments made in the United States of America.

76.     The defendant's activities of marketing, advertising, manufacturing, distributing and/or duplicating displays, logos, hangtags and/or packaging that are virtually indistinguishable from the United displays, logos, hangtags and packaging constitute false designation of origin, false description and false representation that defendant's garments originate from or are

14

sponsored, approved or authorized by United.  Thus, the defendant's activities constitute violations of § 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a).

77.     As a result of defendant's activities of marketing, advertising, manufacturing, distributing and/or duplicating the United displays, logos, hangtags and packaging, United has lost sales and profits and has suffered and will continue to suffer irreparable injury to its business reputation and goodwill.  United's remedy at law is not by itself adequate to compensate it for injuries inflicted and threatened by defendant.

78.     By reason of the defendant's acts of false designation, description and representation, as alleged above, United has suffered and will continue to suffer substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount that will be ascertained according to proof.

79.     The defendant's acts of false designation, description and representation, as alleged above, have caused United irreparable injury, and defendant threatens to continue to commit such acts and, unless restrained and enjoined, will continue to do so, all to United's irreparable injury.

80.     United's remedy at law is not adequate to compensate it for injuries inflicted and threatened by the defendant.

## COUNT IV
### (Rhode Island Common Law Unfair Competition or Equivalent)

81.     United hereby incorporates by reference the allegations of paragraphs 1 through 80 of its complaint as if fully set forth herein.

82.     The acts and conduct of the defendant, as alleged above, including but not limited to passing off the defendant's products as United's garments, are likely to confuse and mislead the authorized dealers, distributors and members of the United States Armed Forces who purchase these garments into purchasing defendant's garments when the United States government, government personnel, the members of the United States military, dealers distributors, the general public, or individual members thereof, actually intended to purchase United's garments.  These acts and conduct of the defendant constitute unfair competition under Rhode Island common law.

83.     The acts and conduct of the defendant, as alleged above, were intentional and fraudulent.

84.     The acts and conduct of the defendant, as alleged above, have damaged, and will continue to damage, United's goodwill and reputation and have resulted in a loss of revenue to United and an unlawful profit to the defendant in an amount that will be ascertained according to proof.

## COUNT V
### (For Imposition Of A Constructive Trust Upon Illegal Profits)

85.     United hereby incorporates by reference the allegations of paragraphs 1 through 84 of its complaint as if fully set forth herein.

86.     By reason of the acts and conduct set forth herein, the defendant has engaged and is engaged in deceptive, fraudulent and wrongful conduct in the nature of passing off its garments as genuine United garments, or components thereof, in commerce.  United believes that the defendant is in possession of the illegal profits from its actions, all of which belong to United.

87.     United is not presently aware of where the defendant may have deposited all of its illegal profits from the defendant's wrongful acts against United.  United believes that the defendant's illegal profits--whether in the form of bank accounts or in the form of real or personal property--will eventually be traced.

88.     By virtue of its wrongful acts, the defendant has been unjustly enriched and therefore holds the illegal profits from its actions as a constructive trustee for the benefit of United.

## COUNT VI
### (Accounting)

89.     United hereby incorporates by reference the allegations of paragraphs 1 through 88 of its complaint as if fully set forth herein.

90.     United is entitled pursuant to 15 U.S.C. § 1117 to recover any profits of the defendant that are attributable to the defendant's acts of infringement.

91     United is entitled pursuant to 15 U.S.C. § 1117 to actual damages or statutory damages sustained by virtue of the defendant's acts of infringement.

17

92.     The amount of money due from the defendant to United is unknown to United and cannot be ascertained without an accounting of the number of units of counterfeit and infringing United garments were offered for distribution and were distributed by the defendant.

## REQUESTS FOR RELIEF

WHEREFORE, United respectfully requests judgment as follows:

(1)     That the Court enter a judgment against the defendant, Dakota, that it has:

    (a)     Willfully infringed the rights of United in its federally-registered trademark under 15 U.S.C. § 1114;

    (b)     committed and is committing acts of false designation of origin, false or misleading description of fact and false or misleading representation against United as defined in 15 U.S.C. § 1125(a);

    (c)     competed unfairly with United at common law; and

    (d)     otherwise injured the business reputation and business of United by its acts and conduct set forth in this Complaint;

(2)     That the Court issue injunctive relief against the defendant, and that the defendant, its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with defendant, be enjoined and restrained from:

    (a)     imitating, copying, or making any other unauthorized use or unauthorized distribution of products protected by United's Registered Trademark, including but not limited to the following Trademark Registration No. 4,795,726 and any other works now or hereafter protected by any United trademark;

    (b)     manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting or displaying any product or thing bearing any simulation, reproduction, counterfeit, copy or colorable imitation of United's Registered Trademark including but not limited to the marks and copyrights represented by the Trademark listed in Section (2)(a) above;

(c)      using any simulation, reproduction, counterfeit, copy or colorable imitation of United's Registered Trademark listed in Section (2)(a) above, in connection with the manufacture, assembly, production, distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion or display of any garment or thing not manufactured by United;

(d)      engaging in any other activity constituting an infringement of United's trademarks or copyrights or of United's rights in, or right to use or to exploit, said trademarks or constituting any dilution of United's name, reputation or goodwill.

(e)      using any false designation of origin or false description that can or is likely to lead purchasers of United's garments to erroneously believe that any garment has been manufactured, assembled, produced, distributed, offered for distribution, circulated, sold, offered for sale, advertised, promoted, displayed, licensed, sponsored, approved or authorized by or for United, when such is not true in fact;

(f)      disposing of or destroying any documents or related materials that show, indicate, reference or otherwise document that defendant have installed, marketed, manufactured, distributed, advertised or duplicated counterfeit or infringing garments that either contain United's trademarks, a colorable imitation or counterfeit of United's trademarked garments; and

(g)      assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above;

(3)      That the Court enter an order declaring that the defendant hold in trust illegal profits obtained from its distribution of counterfeit and infringing copies of United's products;

(4)      That the Court order defendant to pay United's general, special, actual and/or statutory damages as follows:

(a)     United's damages and the defendant's profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b), or, in the alternative, enhanced statutory damages pursuant to 15 U.S.C. §1117(c)(2), for defendant's willful violation of United's registered trademarks; and

(b)     United's damages and the defendant's profits resulting from the defendant's unfair competition with United under the common law of the State of Rhode Island;

(5)     That the Court enter an order that the defendant holds its illegal profits as constructive trustees for the benefit of United and requiring the defendant to provide United a full and complete accounting of all amounts due and owing to United as a result of the defendant's illegal activities;

(6)     That the Court order the defendant to pay to United both the costs of this action and the reasonable attorneys' fees incurred by it in prosecuting this action; and

(7)     That the Court grant to United such other and additional relief as is just and proper.

## <u>JURY TRIAL CLAIM</u>

The plaintiff, United Associates, Ltd., requests a trial by jury on all claims triable as a matter of right.

20

UNITED ASSOCIATES, LTD.

By its Attorneys,

DAVID E. MAGLIO & ASSOCIATES, P.C.

/s/ David E. Maglio, Esq.
David E. Maglio, #3459
The Owen Building
101 Dyer Street, Second Floor
Providence, RI  02903
(401) 831-5400
(401) 831-7979 FAX
dmaglio@magliolaw.com

Dated:  October 22, 2018

H\clients\United\Pleadings\Complaint

21